The next case, number 22-1089, Elmaris Serrano Colon versus the United States Department of Homeland Security et al. At this time, would counsel for the appellant, Serrano Colon, please introduce himself on the record to begin. Good morning. Good morning. My name is Attorney Edgardo Jose Hernandez Juarez. We are on behalf of Plaintiff Appellant Elmaris Serrano Colon. Okay. As we said in our brief, this case is specifically about context. We need context in this case because as members of this panel, we know absenteeism, it's enough, right, for any employee not to perform their essential functions of their work and hence to be removed from the workplace. We don't dispute that. We cannot dispute that. We know that. So since the very beginning from our appeal, we say, okay, absence is secure. We need to put them into context because my client, Elmaris Serrano Colon, it's undisputed and it's on the record. At all times, she could perform the essential functions of her work. She was indeed a TSO screener. She could perform when she was present. I'm sorry? She could perform when she was present to perform. Exactly. But the problem is she wasn't present to perform when she was needed to be present. Exactly. We don't dispute that. The reason being is that because she was denied reasonable accommodations, whereas two times. But even when they accommodated her before they said, no, this is counter to the policy, she was still absent and didn't follow the notice rules. With all due respect, Judge Thompson, we disagree on that approach because according to the actual manual, she did follow the protocol because the actual protocol said that she had to submit 16 years prior, or any time soon. It wasn't constricted to that timeline of 16 minutes. And that's why we took the time to include in our brief an actual table, which you can find on page 22 of our brief because we know we needed to put into context the absences. If you take a look at the table, and I know you will have a member of this panel, you see that no absences whatsoever happened during the timeframe that Almady Serrano Colon was given and allowed the reasonable accommodation request. Your opponents say that table has no grounding in the record at all. How do you respond to that? I'm sorry, Judge Lopez. I didn't hear you. I'm sorry. Your opponents say that that table has no grounding in the record at all. It's just, I guess they're really saying it's a fiction. It's not based on anything in the record. Yeah, and to that, we answer that that's completely false because we took actually the record and we put it into context on that table. So everything surfaces from the actual record that is before this court. Actually, we took the statements, the undisputed statements presented by the appellees specifically, so there's no doubt whatsoever about this issue, and we put it in the table to emphasize the aspect about the absenteeism, because we don't dispute the absence and the attendance issue. What we're saying is that when we put it into context, it's clear cut that no absences whatsoever happened the moment and the time that she was enjoying the reasonable accommodation. Page 70 of the addendum, it says that she had four days of work followed by three days off, during which she still struggled with attendance, and it refers to an admission by her that she had that work scheduled from 09 to April of 10, and then an admission by her that six of her 10 absences from January to June occurred before April. So according to the record, it sounds like even when she was on the reduced schedule that she asked for, she was still having the absences. Okay. So to answer your question, or your approach, Judge Chiara, so let's bifurcate the two instances that McClye had approved the reasonable accommodation. That's 2009 and 2012. So when the first one ended, 2010, she only enjoyed reasonable accommodation the first three months of 2010. That is January, February, and March. So we're not saying that she didn't have absences in 2010. She was negated and canceled that reasonable accommodation, and the same applies in 2012 and so on. So in 2013, yes, she had absences. She had actually a lot of them, 13 absences, seven absences. What we're saying, and it's supported on the record, is that those absences happened after she was taken off the reasonable accommodation. But when she was on the four-day schedule from June 2012 to February 2013, she had absences, didn't she? Isn't that when she said that her absences were because she was depressed by the belief that they were trying to fire her? We disagree with that approach, Judge Chiara. We understand that the main reason is because she was suffering by the fact that she had absences. Well, regardless of what was going on, was she absent? You're saying that there were no absences during the period when she was accommodated. And Judge Chiara is trying to pinpoint specifically that period and the records showing that there were, in fact, absences. And so when you say you disagree with that approach, does that mean you disagree with the facts that Judge Chiara just presented you with? No, I'm trying to pinpoint exactly the moment in time that those absences happened. I'm trying to pinpoint the fact that, indeed, they happened in 2013, as Judge Chiara acknowledges, but they happened after. Not before, not during, after she was taken off reasonable accommodation. So you're saying the district court just misunderstood the record as to the chronology? Correct, because in the district court, the judge tells that plaintiff didn't put forward any evidence showing... I might have missed it, but is there anything in your brief that explains why the district court made a clear factual error in finding absences that occurred during a four-day work schedule? Not that we can tell, Your Honor. That's why we included that in our motion to reconsideration. In some part, it was reconsidered, and that's why we are here, and we're putting everything into context. What we're saying is that everything is in the record, and after attorney myself became the representation of my client, which we actually intervened after the initial judgment. So we took on the record, we navigated through the district court's record, and then we put everything to kind of say, hey, actually, there is here compelling evidence suggesting that, in fact, these absences, we have to put it into context. Because if not, this is an easy case for this panel to dismiss in its entirety, and that's why we need context in this case. Because defendants, the government, only need absences. That's their case in chief, and we know absences from most... Kelsey, using the jargon of the appellate bench, what Judge Cayatta is asking you is whether you made an argument that in making its factual findings, the district court clearly erred. Did you argue that to us? I'm sorry, can you come again, Your Honor? Are you asking, did you, on appeal, have you made an argument that the district court clearly erred in its factual findings? Yes, because this is, what we appeal is that there are actually genuine issues of material fact before the court, and if the district court had taken them into account, then summary judge, that's what you wouldn't have come forward. Well, I mean, from the record, if I can continue, I know my time is over. Yes, you've finished up with this, yes. Yeah, I mean, the evidence in the district court is compelling. We know as a fact that she suffered from febrile malia. No, no, no, we're talking about the district court in granting summary judgment concluded that the record, without reasonable dispute, establishes that there were genuine issues of material fact. The record clearly showed days that she missed, had absences when she was being accommodated. An important fact finding that is the context to which you tell us we should look. What is it that shows that the district court was wrong in saying that the record clearly showed she was absent during those periods? My taking to answer your question is that the district court was wrong in the fact that the aspect of construing the absences, if I can reiterate my answer here. So the absences did occur, but what the mistake of the district court was the fact that they didn't put it into context because when plaintiff... Back to your context point. We understand that. But the district court was saying what the context is. When I'm trying to... It's the intent. What I'm saying is that the reason why, what a fact finder can, and that's preview of the jury. What a fact finder can do is that to find the intent behind the reasons why my client or my son was absent. Because that's an intent and motive. Your time has expired. I know I didn't ask permission from the court at the beginning, but if I can take two minutes. We've given you already three extra minutes already. Thank you. Thank you, counsel. Thank you for the opportunity. Good morning, your honors. May it please the court, Gabriela Paglieri for the government. This court, as well as every other circuit to have reached the issue, have ruled that the Aviation and Transportation Security Act precludes the Rehabilitation Act claims by TSA screeners. This is because the TSA sets certain physical standards that TSA screeners must have and affords the TSA administrator ample discretion to set additional standards and make hiring and firing decisions of screeners notwithstanding any other provision of law. Didn't the whistleblowers legislation create an exception that allows a claim of this type? No, your honor. The WPA only entitles TSA employees to raise certain prohibited personal practices via the procedures laid out in the CSRA. But now, your honor, you didn't argue exhaustion previously in the district court, did you? In the district court, our position has always been that the Rehabilitation Act claims are preempted by the ATSA and that the WPA did not undo the preclusive effects of the ATSA. So are you saying that even if you pursue the internal government administrative procedures, you pursue them until they're completely done, you can't sue? Is that what you're saying? A TSA screener, even if they exhaust the administrative procedures via the CSRA, cannot sue in the district court. The only source of judicial review that they would have would be in the Court of Appeals. And so by sidestepping this issue and asking the court to reverse the judgment of the district court on the merits, the appellant is effectively asking this court to repeal the ATSA and overrule its longstanding precedent set by the field decision based on the enactment of the WPA. But as I mentioned before, that's not what the WPA says or what Congress intended. The WPA, importantly, did not otherwise afford TSA screeners a cause of action under the Rehabilitation Act that they didn't have before and that they can now bring in the EEO and the federal district court. It simply laid out a procedure for TSA screeners to challenge certain prohibited personal practices in the administrative forum by going to the Office of Special Counsel, then the MSPB, and then it goes to the circuit court. It does not allow them to get federal district court review on those claims. So the district court understood this issue as an exhaustion defense and found out you didn't put in any evidence of failure to exhaust. Are you saying now that it's not actually an exhaustion defense? You're saying there is simply no jurisdiction for a district court to hear one of these claims? That is correct, Your Honor. Even if there was exhaustion? Even if there was exhaustion. So the district court misconstrued the WPA, and that's part of our argument on our brief. The district court misconstrued the WPA as allowing TSA screeners to bring Rehabilitation Act claims as mixed cases. And because the district court found that it could be brought as mixed cases, then it went on and said, government, you have not shown that they did not exhaust the mixed case. But the TSA screener from the beginning could not bring this as a mixed case because a mixed case, as defined under Section 7702, and I'll quote, a mixed case is one that involves an employment action that may be appealed to the MSPB and a claim of discrimination prohibited by, in this case, Section 501 of the Rehabilitation Act. Because the ATSA preempts Rehabilitation Act claims by TSA screeners, and the WPA does not otherwise give a substantive right to bring a Rehabilitation Act claim in the district court, a TSA screener did not have a claim to bring as a mixed case along with a challenge to an adverse action that can be directly appealed to the MSPB. Therefore, it couldn't have been a mixed case. One thing that really troubles me about the government's position, the appellant points out that I believe for eight years, the appellant received nothing but positive evaluations. There's not a hint in those evaluations of this absenteeism problem, and the government's response is sort of odd. It says, well, all that means is when she was working, she was fine, but the problem is that she wasn't working often enough. That strikes me as, frankly, a lame response, one that would be very difficult to accept on summary judgment. I mean, how do you respond to the oddity that for eight years, she gets nothing but very strong evaluations, and yet in the end, she's terminated because essentially she's viewed as a problem employee. How do you reconcile those facts? Yes, Your Honor, so during the time that she was employed, she received satisfactory performance evaluations, but during this time, she also received up to seven letters and reprimands advising her of her attendance issues and notifying her that it was a big issue for the agency. It not only caused travel delays, but it also lowered employee morale. So there was no inconsistency with the government's belief that she had a poor attendance issue and that this was a big concern of the agency. The performance evaluations gave her the satisfactory performance ratings. However, in the performance evaluations, there's no specific portion of the evaluation does not count for attendance. There's no attendance point there, so she wasn't being evaluated on her attendance as far as the performance evaluations. But she was aware, and she was notified on and on and on over five years of her poor attendance via the letters of guidance, letters of counseling, and letters of leave restriction. Additionally, in 2013, years before she announced her pregnancy, she was removed due to her tardiness issues. She was removed, and then she appealed to an internal board, and that was converted into a 15-day suspension. But that shows that the government consistently throughout the five years preceding her removal believed that she had an attendance issue and that this attendance issue was a legitimate concern of the agency and eventually led to her removal. And if I may, I want to point out and clarify a couple of points that Appellant's Counsel made. First, the 60-minute rule, it doesn't say it's within 60 minutes or if you have an emergency within any time. It says it's within 60 minutes, and if you're incapacitated or have a reasonable excuse, then you must notify within a reasonable time. The record is clear that often she would fail to notify her absence up to three or almost four hours after her shift had already begun. And in her deposition, she testified that she started getting ready for work an hour before her shift, so there's no reasonable excuse as to why she could not notify the agency. Also, with respect to the absences during the time that she was on a flexible work schedule, from January to February 2010, while on a flexible work schedule, she had six absences, three of which she failed to report at least 60 minutes before her shift, and that is from Appendix 206. Also, from June 2012 to February 2013, while on a flexible work schedule, she accumulated over 60 hours of leave without pay and over 20 hours of sick leave. That comes from the DIAS declaration at Document 96-1, Paragraph 67. Also, in July and August 2015, the months before she was removed, while she was allowed to take every other Wednesday and Thursday off, and she still consistently required between three and four additional work days off. And many of these were unscheduled, that she failed to report within the 60-minute timeframe. And finally, the appellant, as it's pointed out earlier, waived any argument that the district court was incorrect in making the factual findings regarding her absences during reasonable accommodations. They did not bring it on in the appellant's brief, and they also did not say anything in the reply. I don't know unless this court has any further questions. Thank you. Mr. Hernandez, I'm going to give you two extra minutes to address the exhaustion point that counsel led off with. As I understand it, they're saying that you can approach the podium. As I understand the argument, it's not that there was so much a failure to exhaust. It was that an employee, a person employed as your client was, has no ability to bring a discrimination claim in U.S. District Court. Okay. On that regard, we pinpointed a section, you know, first of all, they didn't present a notice of appeal on the lower court for that matter. And that's jurisdictional. The moment the actual district court entered the merits to resolve if the actual summary judgment applied or not under the ADA, discrimination under the Rehabilitation Act, that moment the district court understood, right, that the WPA actually had amended and permitted a cause of action under the Rehabilitation Act on behalf of my client. That moment, if the government wasn't satisfied, they needed to actually preserve the right to appeal. They didn't file a notice of appeal. That's the first thing. The second thing is that it actually strikes me, because, yeah, this issue is of first impression in the sense that no other case has been brought before this court after the WPA amendment. If I'm not mistaken, this is the first one that has been argued before this court today, this morning. Okay? And we have a couple other cases going around actually interpreting this is very important. This is the operative word where we say the notwithstanding provision that first time was included under the Aviation and Transportation Security Act. That's the first one in 2001 after the 9-11 attacks. We know that. That was one of the biggest, if not the worst, catastrophic situation that affected the United States at that time. And that wording supersedes any other provision of law. We don't dispute that. And the case law actually states that, I'm sorry if I can't figure my line of thought, that when we have that provision, notwithstanding any provision of law, any retroactive or prospective law, it's superseded by that. But what happens with the 2020-12 WPA, which also includes... Thank you very much for that added piece. I appreciate your time, Your Honor. Thank you.